# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

| | | |
|---|---|---|
| **QUINCY BAISDEN,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:20-CV-511-MAC |
| | § | |
| **COMMISSIONER OF SOCIAL SECURITY,** | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

The Plaintiff, Quincy Baisden ("Baisden"), requests judicial review of a final decision of the Commissioner of Social Security Administration with respect to his application for disability-based benefits. This action is before the undersigned magistrate judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.[1] The undersigned finds that the administrative law judge's decision lacks reversible error and is supported by substantial evidence, and therefore recommends affirming the decision denying benefits.

### I. JUDICIAL REVIEW

United States district courts may review decisions of the Commissioner of the Social Security Administration. 42 U.S.C. § 405(g) (2020). The scope of judicial review is limited, however, to determining whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). When the Commissioner

---

[1] General Order 05-06 refers civil proceedings involving appeals from decisions of the Commissioner of Social Security Administration to magistrate judges serving the divisions where the cases are filed. *See also* 28 U.S.C. § 636(b)(1)(B) (2009) and E.D. TEX. CIV. R. CV-72 for the Assignment of Duties to United States Magistrate Judges.

applies proper law and the decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also* 42 U.S.C. § 405(g).

Reviewing courts, therefore, give the Commissioner's decisions great deference. *Leggett,* 67 F.3d at 564. Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. *Elfer v. Texas Workforce Comm'n*, 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary"). Rather, it is for the Commissioner to weigh evidence and resolve conflicts. *See Anthony*, 954 F.2d at 295; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

When the Commissioner fails to apply correct principles of law, or when "substantial evidence"[2] does not support the Commissioner's decision, the governing statute authorizes a reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. *See* 42 U.S.C. § 405(g). Thus, courts have power to remand for further administrative proceedings, or they may direct the Commissioner to award benefits without a rehearing. Ordinarily, courts remand for further administrative proceedings to address and cure deficiencies. *See, e.g., Newton v. Apfel*, 209 F.3d 448, 460 (5th Cir. 2000).

---

[2] "Substantial evidence" is a term of art meaning "more than a mere scintilla." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). Evidence is "substantial" when it is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Biestek,* 139 S. Ct. at 1154*; Richardson v. Perales*, 402 U.S. 389, 401(1971); *Marcello v. Bowen*, 803 F.2d 851, 853 (5th Cir. 1986).

## II. BACKGROUND

A.  Procedural History

Baisden applied for disability insurance benefits on July 16, 2019, due to impairments that allegedly became disabling on November 19, 2018. (Tr. 11, 121-124.) Following the denial of his claim, he requested a hearing before an administrative law judge which was held on June 10, 2020. (Tr. 46-60.) Cecile M. Johnson, a vocational expert, testified at the hearing. (Tr. 55-57.)

On June 17, 2020, Administrative Law Judge Gerald L. Meyer (ALJ Meyer) issued a decision denying Baisden's application. (Tr. 11-21.) Baisden requested review of the ALJ's decision by the Appeals Council, which was denied on October 8, 2020, thereby prompting this appeal. (Tr. 1-3.)

B.  Factual History

Baisden was 39 years old at the alleged onset date of disability, with a high school education and past work experience as a welder and paint sprayer/sand blaster. (Tr. 19.) Baisden's application was denied at the initial and reconsideration levels.

C.  Administrative Decision and Appeal

ALJ Meyer utilized the five-step sequential analysis model specified by regulations and approved by courts in reaching his decision denying Baisden's application.[3] At step one, ALJ

---

[3] Pursuant to 20 C.F.R. § 404.1520(a)-(f), the five steps are generally as follows:
  1. The Commissioner ascertains *whether an applicant currently engages in substantial gainful activity*. (If so, a finding of non-disability is entered, and the inquiry ends.)
  2. The Commissioner determines *whether an applicant has a severe impairment or combination of impairments.* (If not, the inquiry ends, and a finding of non-disability is entered.)
  3. The Commissioner determines *whether any severe impairment(s) equals or exceeds those in a Listing of Impairments, 20 C.F.R. Subpt. P, Appendix 1* ("the Listings"). (If so, disability is presumed, and benefits are awarded. If not, the analysis continues.)
  4. The Commissioner determines *whether any impairment(s) prevents the claimant from engaging in regular previous employment*. (If so, a *prima facie* case of disability is established and the burden of going

Meyer found that Baisden has not engaged in substantial gainful activity since November 19, 2018, the alleged onset date. (Tr. 13.) At steps two and three, he found that Baisden has one severe impairment–dysfunction of the joints, but this impairment does not meet or medically qualify under the criteria of any listed impairment in the regulations at 20 C.F.R. pt. 404, subpt. P, app 1 (Listed Impairments) for presumptive disability. (Tr. 13-14.) ALJ Meyer determined that Baisden retained the residual functional capacity (RFC) to perform a limited range of light work, but can only sit for six hours a workday; stand/walk for two hours in a workday; must use a cane; occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds; occasionally balance, kneel, crouch, and crawl; and no work environment with exposure to unprotected heights or dangerous machinery. (Tr. 14-19.)

At step four, ALJ Meyer found Baisden was not able to perform past relevant work. (Tr. 19.) At step five, relying on vocational expert testimony, ALJ Meyer found that Baisden was not disabled because he was able to perform other work that existed in significant numbers in the national economy, such as hand packager, document preparer, and charge account clerk. (Tr. Tr. 20.)

### III.   POINTS OF ERROR

Baisden, proceeding *pro se*, asserts in his brief that he suffers from significant pain and discomfort after he broke his femur and had it replaced. (Doc. #17.) He alleges that this injury prevents him from working, and he argues that he is unable to perform the residual functional capacity items as set forth by ALJ Meyer. (*Id.*) Baisden also attached additional medical

---

forward (to the fifth step) shifts to the Commissioner. *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).
5. The Commissioner determines *whether other work exists in the national economy which the applicant can perform*. (If so, the burden shifts back to the applicant to show he cannot perform the alternative labor. *See id.*; *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986).

records to his brief for the court to consider.

In response, the Defendant states that substantial evidence supports ALJ Meyer's decision. (Doc. #19.) Defendant also claims that the additional records provided by Baisden are not new and material and do not require remand in this case. (*Id.*)

## IV. DISCUSSION AND ANALYSIS

Baisden filed this federal action *pro se*, which imposes an additional layer of consideration for the court. As this and other courts have recognized, a lay plaintiff is unfamiliar with legal terms of art such as "substantial evidence" and lacks expertise in the rules governing Social Security regulations. *See Lockridge v. Colvin*, No. 3:12-CV-4135-BN, 2014 WL 1255745, at *3 (N.D. Tex. Mar. 27, 2014); *Washington v. Barnhart*, 413 F. Supp. 2d 784, 791 (E.D. Tex. 2006). Moreover, no statute, regulation, or court decision prescribes a precise analytical model for *pro se* actions seeking judicial review of adverse administrative decisions by the Commissioner. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 752 (E.D. Tex. 2005). Often, *pro se* litigants in Section 405(g) appeals invite the court to re-weigh the evidence and come to a different conclusion than did the Commissioner, which the court may not do. *See Washington*, 413 F. Supp. 2d at 791. Although courts must construe *pro se* pleadings and arguments liberally considering a party's lay status, they must also maintain their role as neutral and unbiased arbiters. *See Lockridge*, 2014 WL 1255745 at *3. Courts are not bound to "scour the record for every conceivable error," but fundamental fairness and interests of justice require that courts not disregard obvious errors, especially when a lay litigant's ignorance may cause legal errors to go unrecognized. *See id.* (citing *Elam*, 386 F. Supp. 2d at 753).

A. <u>Five-Step Sequential Analysis</u>

The undersigned finds that the most efficient way to evaluate this case is to do so chronologically as it applies to the five-step analysis.

1. *Step One: Substantial Gainful Activity*

ALJ Meyer found that Baisden meets the insured status requirements through December 31, 2023, and he has not engaged in substantial gainful activity since November 19, 2018, his alleged onset date. (Tr. 13.) The parties do not argue against this finding, and there is no evidence to support a contrary finding.

2. *Step Two: Severity of Impairments*

The Defendant defends ALJ Meyer's findings that Baisden has only one severe impairment—dysfunction of the joints. (Tr. 13.) Baisden contends in his briefing that he also has back pain. (Doc. #17.) Baisden contends that his back and leg pain are a result of a 2003 car accident wherein he broke his femur and had surgery to replace his femur with a rod from his hip to his knee. (Tr. 289.) Although Baisden worked for many years[4], he claims now that he did so with pain until it finally became unbearable, and he stopped working in 2018. (Tr. 238.)

ALJ Meyer considered Baisden's back pain but found that this condition was not "severe." (*Id.*) He noted that Dr. Chandrakant Patel performed a consultative examination on November 22, 2019, for this alleged impairment and found that Baisden had a normal gait; no tenderness, spasms, stiffness; a negative straight leg test; and a normal lumbar x-ray. (Tr. 14, 289-293.) Baisden reported at the exam that he does not take any medication by mouth for his

---

[4] Baisden's ability to work as a plasterer, painter, and welder for several years (Tr. 131-138) with the same condition he now complains of with no documented change in his medical treatment or condition diminishes the credibility of his claim for disability benefits. *See Fraga v. Bowen,* 810 F.2d 1296, 1305 n.11 (5th Cir. 1987) (Fraga was able to, and did, perform heavy work for several years while he suffered from hypertension—the same condition now alleged to be disabling.).

lower back pain because it improves with exercise, stretching, and an over-the-counter pain patch. (*Id.*)  Also, at this exam, Baisden is quoted as saying, "I could not continue to work since October 2018 because I had to help my wife at home in doing all the work including cooking, buying grocery [sic], cleaning house, maintaining yard as well as homeschooling 6-year old and 10-year old.  In addition, I get bored at home so I play with my 6-year and 10-year old kids at home.  I also do other exercise including walking, stretching.  All these activities are usually not associated with significant pain or discomfort." (Tr. 289.)  ALJ Meyer found no etiology or objective evidence to support an additional impairment related to his back pain. (*Id.*) Nonetheless, ALJ Meyer asserted that all of his alleged symptoms were considered in assessing his residual functional capacity. (*Id.*)

As noted by the Defendant, the medical record for Baisden during his disability period is sparse.  In addition to the consultative exam, Baisden had two other relevant medical exams. On November 27, 2018, one year prior to Dr. Patel's exam, Nurse Practitioner Amber Peveto with Griffith Family Health examined Baisden upon his request for a handicap placard.  (Tr. 271.)  At this exam, NP Peveto's notes indicate that Baisden had difficulty ambulating only upon first standing and for long distances and wants to be able to park close when going to the store.  (*Id.*)  Her notes further indicate that he has pain in his hip, knee and lower back, but he does not see anyone for pain management due to costs[5] and the ineffectiveness of the prescribed medications.  (*Id.*)  NP Peveto signed off on Baisden's application for the handicap placard stating that he has a permanent disability as defined by the Texas Transportation Code.[6]  (Tr.

---

[5] Baisden has not applied for indigent medical care.  (Tr. 54.)

[6] Texas Transportation Code § 681.001 defines a disability as a condition that includes "mobility problems that substantially impair the person's ability to ambulate." (Tr. 256.)  It also defines a mobility problem as including several scenarios, such as cannot walk 200 feet without stopping to rest, cannot walk without the use of a cane, or is severely limited in the ability to walk because of an arthritic or orthopedic condition.  (*Id.*)  This definition of disability is a much lower standard than that required of a claimant in a social security disability case.  *See Solanki*

256.)

On February 9, 2018, Baisden saw NP Peveto for a cough and his arthritic pain. (Tr. 250.) He stated that he had not taken any medication[7], and the notes indicate that he refused a steroid injection. (*Id.*) Baisden was advised to take Tylenol and use a heating pad or Bio-freeze for the pain as needed. (*Id.*) The transcript also includes medical records from Griffith Family Health for visits on November 2, 2018, October 1, 2018, and September 26, 2018, which were general wellness visits. (Tr. 272-274.)

Baisden's records also underwent a document review by State Agency Medical Consultants—Dr. Robin Rosenstock and Dr. Leigh McCary. Both of these doctors found that Baisden has one severe impairment—dysfunction of the joints. (Tr. 62, 72.) Dr. Rosenstock reported that Baisden has the RFC to work at the light exertional level with the ability to stand, walk and sit for six hours in an eight-hour workday. (Tr. 63-66.) This level is less restrictive than that assessed by ALJ Meyer. Dr. McCarey reported that Baisden could perform work at the sedentary level with the ability to stand and walk for two hours in a workday and sit for about six hours in a workday, which is the same RFC found by ALJ Meyer. (Tr. 73-76.) Accordingly, ALJ Meyer found both of these opinions persuasive.

In his function report dated August 3, 2019 (approximately two weeks after applying for benefits), Baisden stated that he: limps if he carries more than fifty pounds; exercises; cooks complete meals; fixes things around the house; performs yard work and household chores; shops twice a week; likes to go fishing; attends church three times a week and sings with the choir; and

---

*v. Colvin,* No. 4:15-CV-03250, 2016 WL 7742816, at *2 (S.D. Tex. Aug. 3, 2016), *R. & R. adopted*, No. 4:15-CV-03250, 2016 WL 4939567 (S.D. Tex. Sept. 13, 2016) ("However, the Texas Department of Motor Vehicles is an entirely separate government entity from the Social Security Administration and does not use the same criteria in issuing parking placards as the ALJ uses in evaluating RFC.")

[7] At the administrative hearing, on June 10, 2020, Baisden testified that he is still not taking any medication. (Tr. 51-52.)

can also walk for a mile but will hurt afterwards. (Tr. 173-180.) Baisden states in his report that he stopped working because he now has arthritis in his leg. (Tr. 191.)

In a function report filled out by Baisden on October 22, 2019, just two and a half months later, he states that it is hard for him to stand and walk for long periods and he stays in bed half of the day. (Tr. 208-215.) He also reports that he can no longer cook, do yard work, fish, or shop. (*Id.*) His walking decreased to only 20-30 feet and he now needs a cane or crutches. (Tr. 213-214.)

Baisden also submitted new recent medical records[8] attached to his brief in this matter. (Doc. #17, Ex. 1.) Even if these records were considered part of the original record, they would not change the result in this case. They consist of one duplicate record from Dr. Patel that is already contained in the transcript, records for two exam visits that occurred after ALJ Meyer's decision, and a prescription for a cane written one week prior to the date Baisden filed his brief in this matter. In these records, Baisden complains of generalized pain, as well as depression and anxiety. (*Id.*) These mental impairments, however, were not claimed until after ALJ Meyer's decision and therefore cannot be considered for Baisden's application for benefits now on appeal. Moreover, ALJ Meyer accounted for Baisden's use of a cane in his RFC despite the lack of a prescription at the time. (Tr. 14, 55.)

The undersigned finds that ALJ Meyer's step two findings are supported by substantial evidence in the record, including medical opinions, exams, and x-rays. Moreover, ALJ Meyer accommodated all of Baisden's symptoms and resulting limitations in the RFC findings. *See*

---

[8] In order to justify remand based upon newly provided evidence, the evidence must be "new" and not merely cumulative of what is already in record, it must be "material," *i.e.*, it must be relevant, probative, and likely to have changed outcome of the determination, and the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record. 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Pierre v. Sullivan*, 884 F.2d 799 (5th Cir. 1989). Baisden has not met this standard.

*Reliford v. Colvin*, No. H121850, 2013 WL 1787650, at *13 (S.D. Tex. April 25, 2013) ("even if the ALJ's failure to make a specific severity finding regarding foot pain was an error, it was harmless because he considered related limitations at subsequent steps of the disability analysis"). As such, there is no error at this step.

       3.  *Step Three: The Listings*

"The Listings" is a shorthand reference to Appendix I, Subpart P, Part 404 of the Regulations. That Appendix lists various impairments and indicators of their medical severity. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2004). Impairments found in "the Listings" are those that the Commissioner acknowledges are so severe that they automatically preclude substantial gainful activity. 20 C.F.R. § 416.920(d) (2012); S.S.R. 88-3c, 1988 WL 236022 (1988). Accordingly, the Listings function as a short-cut for claimants with impairments that render them *per se* disabled. *Barajas v. Heckler*, 738 F.2d 641, 644 (5th Cir. 1984) (stating that the "appendix relied upon by the district court is a listing of '*per se* disabilities' and should be used only if the claimant has satisfied the Secretary that [his] impairment is severe") (citing *Chico v. Schweiker*, 710 F.2d 947, 951 (2d Cir. 1983) and 20 C.F.R. § 404.1525(a), 416.920(d)). It is the claimant's burden to provide medical findings that support each of the criteria of a listed impairment. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).

ALJ Meyer's step three findings evaluated whether Baisden met Listing 1.03. This Listing states:

> Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. Pt. 404 Subpart P, App. 1, § 1.03. ALJ Meyer found that Baisden did not meet these requirements because the record shows that he can effectively ambulate within 12 months of the

onset of his impairment, as defined in 1.00B2b. Listing 1.00B2b addresses the ability to ambulate in detail and defines it as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of both upper extremities." *Id.* at § 1.00B2b(1).

Baisden's onset date is November 19, 2018. (Tr. 14.) A few days after that, on November 27, 2018, NP Peveto's notes indicate that Baisden has difficulty ambulating only upon first standing and for long distances and he wanted a handicap placard to be able to park close when going to the store. (Tr. 271.) However, in Baisden's function report dated August 3, 2019, Baisden stated that he can walk for a "good mile," but if he pushes it further, he will suffer. (Tr. 178.) Just a little over twelve months from his onset date, on November 22, 2019, Baisden saw Dr. Patel for a consultative exam, and he noted that Baisden had a normal gait. (Tr. 289-293.) In addition, ALJ Meyer accounts for Baisden's use of a cane in his RFC; however, this does not affect his ability to effectively ambulate according to the Listing, which requires a hand-held assistive device that limits the functioning of *both* upper extremities.

Review of the evidentiary record supports ALJ Meyer's findings, and therefore, the undersigned finds that no error was committed at step three.

4. *Step Four: Residual Functional Capacity and Past Relevant Work*

Residual functional capacity ("RFC") is defined as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545 (2012). The Commissioner then utilizes this assessment in determining whether a claimant can still perform past relevant work (step four), or alternative

available work as it is generally performed in the national economy (step five).

ALJ Meyer found that Baisden has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations: he can sit for six hours of an eight-hour workday; stand and/or walk only two hours in an eight-hour workday; must use a cane for ambulation; never climb ladders, ropes and scaffolds; can occasionally climb ramps and/or stairs; occasionally balance, kneel, crouch and crawl; and cannot work at unprotected heights or around dangerous machinery. (Tr. 14-18.)

The Defendant argues that ALJ Meyer committed no error in weighing the medical evidence and discounting Baisden's subjective complaints, and that the weight of the medical evidence constitutes substantial evidence for the ALJ's decision. In reaching his decision, ALJ Meyer provided a detailed discussion of Baisden's subjective complaints and the objective medical treatment record. (Tr. 18-21.) ALJ Meyer also considered the medical opinion evidence from Dr. Patel, NP Peveto, and the State Agency Medical Consultants as previously discussed above in consideration of steps one through three.

The undersigned finds that ALJ Meyer carefully considered the record and made a decision supported by the totality of the evidence in this case. Ultimately, the undersigned's review of the record shows that substantial evidence supports ALJ Meyer's RFC finding, and there is no error at this step.

     5. *Step Five: Alternative Work*

ALJ Meyer found at step four that Baisden was limited to "light" work but limited his standing and walking to two hours and allowed for sitting for six hours a workday. Therefore, at step five, with the support and testimony of the vocational expert, ALJ Meyer found that Baisden is able to perform the following alternative "sedentary" jobs: hand packager, document

preparer, and charge account clerk.[9]  (Tr. 19-20, 56-58.)  The undersigned finds that substantial evidence supports ALJ Meyer's decision at this step.  The vocational expert also stated that these jobs were available in significant numbers in the national economy.  (*Id.*)  A finding based on vocational expert testimony generally must be upheld by the court unless it is determined by erroneous predicate findings occurring earlier in the sequential analysis.  *Elam*, 386 F. Supp. 2d at 754.; *see also* 20 C.F.R. §§ 404.1566(d)-(e), 416.966(d)-(e).  Such testimony constitutes substantial evidence when the hypothetical question asked of the vocational expert incorporates all disabilities that the ALJ has found, the disabilities recognized by the ALJ are reasonable under the evidence, and the ALJ's ultimate determination is consistent with the expert vocational testimony.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).  Therefore, there is also no error at this step of the analysis.

## V. RECOMMENDATION

ALJ Meyer's application of the sequential analysis is free from legal error and supported by substantial evidence for the reasons discussed in the preceding sections.  Consequently, the administrative decision should be affirmed.

## VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation.  Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report.  *See* 28 U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2).  A party who objects to this report is entitled to a *de novo* determination by the United States district judge of those proposed findings

---

[9] The vocational expert also testified at the administrative hearing that Baisden can perform these same jobs using a cane to ambulate.  (Tr. 58.)

and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1) (2009); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

**SIGNED this the 6th day of July, 2022.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE